Argued and submitted February 22, 1993, reversed and remanded for reconsideration May 25, respondent's motion for reconsideration filed June 3 allowed by opinion July 6, 1994
See 129 Or App 92, 877 P2d 1212 (1994)

In the Matter of
Laurentian Capital Corporation
Cease and Desist Order.

LAURENTIAN CAPITAL CORPORATION,
*Petitioner,*

*v.*

STATE OF OREGON,
DEPARTMENT OF INSURANCE
AND FINANCE,
Insurance Division,
*Respondent,*

*and*

PACIFIC NORTHWEST
LIFE INSURANCE COMPANY,
*Intervenor.*

(90-05-037; CA A69025)

875 P2d 523

Peter A. Ozanne argued the cause for petitioner. With him on the brief was Schwabe, Williamson & Wyatt.

Jas. Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

No appearance for intervenor Pacific Northwest Life Insurance Company.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

HASELTON, J.

---

* Haselton, J., *vice* Durham, J.

## HASELTON, J.

Petitioner, Laurentian Capital Corporation, seeks review of a final order of the Department of Insurance and Finance (DIF)[1] continuing a cease and desist order against Laurentian. Under the order, DIF directed Laurentian to cease and desist from engaging in activity that, in DIF"s view, would permit Laurentian to "direct or cause the direction of the management" of Pacific Northwest Life Insurance Company (Pacific), in violation of *former* ORS 732.522,[2] *former* ORS 732.545,[3] and *former* ORS 732.585(1), (2)(a), (3).[4] Laurentian contests DIF's conclusions that its activities would

---

[1] This department is now known as the Department of Consumer and Business Services but is referred to as DIF throughout this opinion.

[2] In 1993, the legislature substantially modified the provisions of ORS chapter 732 regulating acquisitions of Oregon domestic insurers. *See* Or Laws 1993, ch 447, § 122.

*Former* ORS 732.522(2) provided:

"ORS 732.545(1), (2), (3) and (5) shall apply to an acquisition described in ORS 732.505(5) [acquiring more than 25 percent of the shares from the shareholders] only if:

"(a) The acquiring party is to acquire 50 percent or more of the capital stock of an insurer; or

"(b) Upon consummation of the acquisition, the acquiring party will possess, directly or indirectly, the power to direct or cause the direction of the management and policies of the insurer to be acquired."

[3] *Former* ORS 732.545 provided, in part:

"(1) Following the approval of the proposed acquisition by the director or pursuant to court order or decree, the proposed acquisition shall be submitted to * * * the shareholders of an insurer with capital stock * * *.

"* * * * *

"(3) Unless the articles or bylaws of any insurer or other party to the proposed acquisition provide for a greater percentage or number of votes, the proposed acquisition shall be approved by at least two-thirds of the votes cast * * *."

[4] *Former* ORS 732.585 provided, in part:

"The following are violations of ORS 732.505 to 732.595:

"(1) The failure to file the plan required under ORS 732.525 or the statement required under ORS 732.523.

"(2) Effecting or any attempt to effect an acquisition of an insurer:

"(a) Unless the director or the reviewing court has approved the acquisition pursuant to ORS 732.540, and the * * * shareholders * * * whose approval is required have given their approval pursuant to ORS 732.545; or

"* * * * *

"(3) Any other failure to comply with the provisions of ORS 732.505 to 732.595 or with any rule or order issued by the director * * *."

violate the pertinent statutes and asserts, further, that DIF's order violates ORS 731.252(2) because it fails to describe the proscribed conduct with sufficient specificity. We reverse and remand for clarification of the scope of DIF's order.

In 1987, Laurentian owned 21 percent of Pacific's outstanding capital stock. Pursuant to *former* ORS 732.540, Laurentian sought approval from the director of DIF for its proposal to acquire an additional 8 percent and, potentially, to acquire more shares in the future.[5] In support of petitioner's application, Laurentian's former president indicated that Laurentian had no present intention to direct the management of Pacific "under current circumstances" and that Laurentian would decline a position on. Pacific's board of directors "at this time." The director approved Laurentian's "acquisition of less than 50%" of Pacific's stock.

Laurentian proceeded to acquire additional shares and, by May 1990, owned 37.8 percent of Pacific's stock. At that point, Laurentian requested two positions on Pacific's nine-member board of directors. When Pacific denied that request, Laurentian, pursuant to ORS 732.415,[6] submitted to DIF proxy solicitation materials for three positions on Pacific's board. DIF then issued an order that Laurentian

"immediately cease and desist from violating [ORS 732.522, 732.545, and 732.585(1), (2)(a), (3)], * * * unless and until it files for and obtains the requisite approvals of the director and others as required under ORS 732.505 to 732.595."

---

[5] *Former* ORS 732.523 provided, in part:

"(1) Neither an acquiring party nor any other person shall effect an acquisition described in ORS 732.505(5) * * * unless all of the following requirements are met:

"* * * * *

"(c) The consummation of the acquisition has been approved by the director under ORS 732.540 and by the shareholders of any insurer or other corporation whose approval is required pursuant to ORS 732.545."

[6] ORS 732.415 provides, in part:

"(1) A proxy may be authorized in writing to vote the shares of any stockholder * * * of a domestic stock insurer at any regular or special stockholders' meeting.

"* * * * *

"(3) Every form of proxy or consent and soliciting material to be used in connection therewith shall be filed with the director in advance of any circulation * * *."

Laurentian requested a hearing on the Cease and Desist Order. DIF found that, with 37.8 percent of Pacific's stock, Laurentian did *not* have the power to "direct or cause direction" of Pacific's management. However, DIF concluded that Laurentian's attempt to obtain positions on Pacific's board of directors "breache[d] the assurances rendered to the Director [at the 1987 hearing] about no takeovers." Consequently, DIF held that "the 1987 Order of Approval is no longer valid authority for future acquisitions of Pacific's shares by [Laurentian]." DIF ordered that Laurentian comply with the Cease and Desist Order.

We first address Laurentian's argument that DIF failed to set forth a statement of the specific charges against Laurentian, as required by ORS 731.252(1). That statute provides:

> "Whenever the director has reason to believe that any person has been engaged or is engaging or is about to engage in any violation of the Insurance Code, the director may issue an order, directed to such person, to discontinue or desist from such violation or threatened violation. The copy of the order forwarded to the person involved shall set forth a statement of the specific charges * * *."

Neither the Cease and Desist Order nor the Final Order incorporating it precisely identify the conduct for which Laurentian must seek approval. However, it is clear from the order's context and DIF's supporting opinion that Laurentian must, at a minimum, obtain approval for further (*i.e.*, greater than 38 percent) acquisitions of Pacific's stock. What is unclear is whether Laurentian must also seek approval for other activity, specifically including the proxy solicitations. Indeed, in its arguments here, DIF itself offers inconsistent readings of its order on this point. In its brief, DIF argued:

> "The final order adheres to the cease and desist order and requires petitioner under ORS 732.540 to obtain the Department's approval for acquisition of shares *or other actions, including proxy solicitations,* that would give it, directly or indirectly, the power to direct the management and policies of Pacific and to obtain shareholder approval under ORS 732.545 before gaining such power." (Emphasis supplied.)

However, at oral argument, counsel for DIF insisted:

> "The thrust of the order in this case is whether, for the remaining twelve percent of stock acquisitions that Laurentian

might acquire before it reaches that 50% point, whether it will need to seek Department approval and a two-thirds shareholder approval for that twelve percent. Once you reach the 50% level under the statute, you are considered to be in control of the corporation, having that power, and, therefore, you have to seek both DIF approval and the two-thirds shareholder approval. So what this case really is about and the effect of this order is that Laurentian is required to seek approval notwithstanding that 1987 kind of automatic approval for up to 50%. *The effect of this order is that Laurentian now will have to go back to DIF for every acquisition of stock and it will have to seek two-thirds approval.*" (Emphasis supplied.)[7]

Because DIF's order does not conform to ORS 731.252(1), we remand for DIF to specify what conduct, if any, beyond the acquisition of additional Pacific stock its order proscribes. *See* ORS 183.482(7). Consequently, it is unnecessary for us to reach Laurentian's argument that DIF misconstrued and misapplied *former* ORS 732.522(2)(b) in subjecting Laurentian's actions to shareholder approval under *former* ORS 732.545.[8]

Reversed and remanded for reconsideration.

.

---

[7] In this connection, we note that DIF's Final Order acknowledged that Laurentian's proxy solicitation "constitutes neither a violation of the 1987 Order of Approval nor an acquisition." *Accord former* ORS 737.505 (defining "acquisition").

[8] Following oral argument of this case, the legislature substantially modified chapter 732. *See* n 1, *supra*. Those amendments either deleted or materially altered many of the provisions specified in the Cease and Desist Order, including *former* ORS 732.522 and *former* ORS 732.545. Thus, the Order appears to enjoin Laurentian from violating statutes that have been substantially modified or no longer exist.